United States District Court
Southern District of Texas

**ENTERED**

June 30, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSIE JOSEPH SMITH | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1664 |
| | § | |
| HOUSTON EEOC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This memorandum opinion and order sets forth in detail the basis of the Court's ruling on the record on June 23, 2020, **DENYING** Plaintiff Jessie Joseph Smith's motion for "Immediate Reqsal [sic]" (Dkt. 28) and "Notice of Direct Violation [of the] Judiciary Act of 1789 on the Part of the United States Judicial System in the Souther [sic] District in Total." Dkt. 31 (collectively, the "First Motion"). After the Court ruled on the First Motion, Smith filed another series of motions seeking recusal. Dkts. 37, 45, 50, 53, 54 (collectively, the "Second Motion"). This memorandum opinion and order also sets forth the Court's basis for **DENYING** Plaintiff's Second Motion.

### I. Procedural Background

On May 7, 2020 Plaintiff Jessie Joseph Smith ("Smith") filed his original complaint, alleging federal and state age and disability discrimination and retaliation claims against his former employer, Defendants Cajun Industries, LLC, ("Cajun"), and the Equal Employment Opportunity Commission, the United States Attorney General, and Pam Anderson, who the complaint identifies as an employee of the United States Attorney

General's office (collectively, the "Federal Defendants"). Dkt. 1 at 1–2, 6. The complaint demands damages in excess of $100 million. Dkt. 1 at 11.

The same day, Smith sought permission to proceed *in forma pauperis*. That application was submitted to another court of the Southern District of Texas and conditionally granted. *Smith v. Cajun Industries LLC et al*, Misc. Action 20-1275 (S.D. Tex. May 7, 2020) ("IFP Action"). The application attached a document titled "Appearance of Counsel" and signed by Sam J. Holloway ("Holloway") in the field titled "attorney's signature." IFP Action, Dkt. 1-4. Apparently based on that representation, the Clerk of the Court listed Holloway as Smith's attorney on the docket sheet in this action.

On May 18, 2020, Holloway filed a motion to appear *pro hac vice* on Smith's behalf, listing himself as the lawyer seeking admission. Dkt. 6; *see also* Dkt. 7. Although Holloway attached thirty-eight pages of records to this motion, none of the documents indicated that Holloway is a licensed attorney in any state or country. Dkt. 6.[1]

On June 9, 2020, the Court denied Holloway's request to proceed *pro hac vice* and ordered the Clerk of the Court to remove any designation of Holloway as Smith's attorney from the Court's electronic filing system. Dkt. 18. The order also struck any pleadings Holloway filed on Smith's behalf. The Court noted that, contrary to Holloway's apparent belief, a statutory durable power of attorney does not permit a non-attorney to represent a

---

[1] Although the attachments contain information, such as Holloway's Multistate Professional Responsibility Examination scores for four years, suggesting that Holloway had previously applied for a license to practice law, conspicuously absent from the attachments was any indication whether Holloway was ever denied a law license, and any reasons for such a denial.

litigant in federal court. *See, e.g.*, *Williams v. United States*, 477 Fed. App'x. 9, 11 (3d Cir. 2012) (per curiam).

The next day, Smith again filed pleadings signed by Holloway as "attorney for plaintiff" or "counsel for plaintiff," including a "Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment" featuring, on the first page, an e-signature for "Sam J. Holloway, Attorney for Plaintiff." Dkt. 19 at 1, 4; *see also* Dkt. 20; Dkt. 21 at 4, 5.

Since Smith was proceeding *pro se*, the Court set a date for the first status conference to ensure there was no confusion about the Court's order that Holloway could not continue to file and sign pleadings on Smith's behalf, and to discuss how the case would proceed. Dkt. 23.

The Court held a status conference via Zoom videoconferencing on June 15, 2020. Smith and Holloway both appeared, broadcasting from the same room. So did the Federal Defendants, through counsel. Cajun did not appear. Initially, only Holloway was visible on the frame captured by his video camera.

Smith raised his concern that, in accordance with his proceeding *in forma pauperis*, the U.S. Marshals were charged with serving Cajun with notice of Smith's complaint, but Cajun was not present at the hearing. Counsel for the Federal Defendants stated that, based on conversations with Cajun's counsel, she understood Cajun had not been served. Holloway stated that it was a "lie" that Cajun had not been served. The Court stated that the record did not reflect any return of service for Cajun and that the Court could not order the appearance of a party that had not been served.

The Court explained that Holloway could not appear as counsel without being granted admission to the Southern District of Texas. Holloway stated that if the Court did not allow him to appear for Smith, Holloway would be in "default of [his] contractual obligations" to Smith and the Court would be depriving Smith of his due process rights. The Court reiterated its order that Holloway's designation as attorney be removed from the Court's electronic filing system because he is not admitted to appear in the Southern District of Texas. The Court noted that 1) despite not having a license to practice law, Holloway had signed and filed pleadings in federal court on Smith's behalf,[2] 2) the Court had ordered him to stop doing so, and 3) it is unlawful to practice law in Texas without a license. Holloway demanded that the Court strike its statements from the record, which the Court declined to do.

Holloway then left the frame captured by his video camera. Smith took his place and identified himself to the Court. The Court explained to Smith directly that since Holloway is not a licensed attorney, he cannot represent Smith or continue to file any pleadings on Smith's behalf. Smith attempted to interrupt the Court to state that what the Court had just said was "not true." The Court referred to its prior order and explained the

---

[2] *See, e.g.*, Dkt. 5, Plaintiff's "Amended Complaint" at 5 (under the section "for attorneys," in the spaces entitled "signature of attorney" and "printed name of attorney," Holloway signs and spells out his name, and in the space marked "name of law firm" he lists "Sam J. Holloway Group LLP."); Dkt. 10, Plaintiff's "Motion to Remove Items" at 1 ("This court has named Sam J. Holloway as lead attorney for the Plaintiff and no evidence to the contrary will dispute that at this point."); Dkt. 11, Plaintiff's "Notice of Remand" (featuring Holloway's signature in the field, "Signatures of parties or attorneys"); Dkt. 12, Plaintiff's "Exhibits and Witness List" (listing Sam. J. Holloway in a field titled "Plaintiff's Attorney").

legal authority clearly stating that a statutory power of attorney does not permit an unlicensed individual to represent a litigant in federal court.

Smith stated his belief that the U.S. Marshals, the Court, and the government in general were ignoring their duties to ensure timely service of process on Cajun. At the close of the hearing, the Court assured Smith that it would investigate the matter further and reconvene the hearing when it had a status report from the U.S. Marshal Service.

Although Smith disagreed with the Court's ruling, he confirmed that he would prosecute this matter *pro se*. The Court adjourned the hearing.

After the hearing, the Court verified that the U.S. Marshals served Cajun with process on June 18, 2020. Since Cajun is headquartered in Louisiana, the U.S. Marshals for this federal district had to forward the service of summons request to their counterparts in the Western District of Louisiana. Accordingly, at the time of the June 15, 2020 hearing, Cajun had not been served with process, and it was not required to appear at the hearing. Given the circumstances, including the coronavirus pandemic, the Court found that the U.S. Marshals had not in any way delayed service of summons on Cajun. As promised, the Court set the case for another status conference on June 23, 2020. Dkt. 26.

On June 19, 2020, Smith and Holloway filed an amended complaint listing two plaintiffs: Smith, and a corporation named "The Eragon Group," which purported to represent itself *pro se* through its president, Sam Jude Holloway. The allegations in the amended complaint are essentially identical to the previous complaint, and the amended complaint asserts no claims by "The Eragon Group" separate and apart from Smith's employment discrimination claims. Dkt. 29.

The same day, Smith and Holloway filed a "Notice of the Violation of the Judicial Cannons and Request for Immediate Requsal [sic]" (Dkt. 28) and a "Notice of Direct Violation [of the] Judiciary Act of 1789 on the Part of the United States Judicial System in the Souther [sic] District in Total." Dkt. 31. The Court collectively considers these filings below as the "First Motion." Smith and/or Holloway have since filed, or emailed to the Court's case manager, (1) a motion for "Immediate Reqsal [sic] for Judicial Acts" (Dkt. 37, emailed to the Court's case manager during the June 23 hearing; *see also* Dkt. 54, a duplicate filed on June 26, 2020), (2) two more identical, untitled motions seeking recusal (Dkts. 45, 50), and (3) a final motion for "Immediate Recusal for Judicial Acts" containing no factual allegations or argument. Dkt. 53. The Court collectively considers these filings, filed after the start of the June 23 hearing, the "Second Motion."

For the reasons set forth below, the Court finds that both sets of motions should be denied. Specifically, the Court finds that the motions are defective on their face because they are not accompanied by a sworn affidavit from Smith, as required by 28 U.S.C. § 144, and must be denied on this ground alone. The Court also finds that even if an affidavit were attached, the motions do not assert any facts, much less legally recognizable facts, warranting recusal.

## II.    Applicable Legal Standards

Motions for recusal such as Smith's are governed by 28 U.S.C. §§ 144 and 455. These provisions require recusal if a judge "has a personal bias" concerning a party, 28 U.S.C. §§ 144, 455(b)(1), if "his impartiality might reasonably be questioned," *id.* § 455(a),

or if he has "personal knowledge of disputed evidentiary facts concerning the proceeding,"

*id.* § 455(b)(1).

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. The mere filing of a motion and affidavit under section 144 does not

mandate recusal:

> On its face [section 144] appears to require automatic disqualification upon filing of a proper affidavit. It has not been read this way. Instead, courts have held that the judge has not only the right but the duty to examine the affidavit and certificate to determine whether they are timely and legally sufficient. The affidavit and certificate are strictly construed against the party seeking disqualification. Only if the documents meet this strict scrutiny does recusal become mandatory.

CHARLES A. WRIGHT ET AL., FED. PRAC. & PROC. § 3551 (3d ed.) (footnotes omitted). A

motion to recuse must be strictly scrutinized for form, timeliness, and sufficiency to guard

against the danger of frivolous attacks to the orderly process of justice. *See, e.g.*, *United*

*States v. Womak*, 454 F.2d 1337, 1341 (5th Cir. 1972); *Traveler's Ins. Co. v. Liljeberg*

*Enter., Inc.*, 38 F.3d 1404, 1410–1411 (5th Cir. 1996). Determining the legal sufficiency

of the affidavit is addressed to the sound discretion of the district court. *See United States v. Harrelson,* 754 F.2d 1153, 1165 (5th Cir. 1985).

Sections 144 and 455(b)(1) are governed by the same principles. *Liteky v. United States*, 510 U.S. 540, 548–51 (1994). When applying § 455(a), a court must determine "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995).

### III.   Analysis

#### A.  The First Motion (Dkts. 28, 31)

##### i.  The First Motion does not comply with the statutory requirements of Section 144.

The Court denies the First Motion because Smith has provided no affidavit in support of any of the factual allegations he asserts as the basis of the First Motion. This renders the motion defective and it may be denied on this ground alone. *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979) (holding motion for recusal lacked merit first because "[t]he affidavit required by Section 144 was not filed"). Nor has Smith provided a certificate stating that his motion is made in good faith as required by section 144. *See Parker v. Bd. of Supervisors Univ. of Louisiana-Lafayette*, 270 F. App'x 314, 316 (5th Cir. 2008) ("[Plaintiff] failed to accompany his motion asserting bias with a 'timely and sufficient affidavit' and a 'certificate of counsel of record stating that it is made in good faith,' even if signed by himself *pro se*, as required by § 144.").

The certification requirement is not simply a *pro forma* procedural obligation but is key to the integrity of the recusal process. *Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264, 273 (D.D.C. 2010). The certification requirement is essential to "guard against the removal of an unbiased judge through the filing of a false affidavit." *Id.* The certification requirement therefore serves as a "check on abuse of the recusal process," assuring the Court that the statements in the affidavit are made in good faith. *Id.* Given the importance of the certification, the failure to comply with this requirement is not simply a procedural error. *Id.*

Even if the motion were accompanied by a sworn affidavit and certificate of good faith, as discussed below, it still should be denied because it sets forth no facts showing a valid basis for recusal.

### ii. The allegations set forth in the First Motion are legally insufficient to warrant recusal.

Even if the Court were to ignore the First Motion's procedural deficiencies, the motion should still be denied. The motion does not allege any particular facts, much less legally sufficient facts, that demonstrate bias warranting disqualification under section 144.

The Fifth Circuit has set forth a clear test to determine legal sufficiency. The facts in an affidavit are legally sufficient if they (1) are "material and stated with particularity"; (2) are "such that, if true they would convince a reasonable [person] that a bias exists"; and (3) "show the bias is personal, as opposed to judicial, in nature." *Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975) (citation and quotations omitted). As the Supreme Court has emphasized, under section 144, "[t]he alleged bias and prejudice to

be disqualifying must stem from an extrajudicial source." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). Judicial remarks "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States,* 510 U.S. 540, 555 (1994). Likewise, "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* Only where such remarks and rulings "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible" is recusal required. *Id.* Under section 144, the focus of a legal sufficiency analysis is on actual bias against a party, not against attorneys or non-parties to the suit. *See Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990).

Sifting through the motion for factual allegations featuring the particularity that section 144 requires, one finds only the conclusory assertions that the Court (1) has somehow effected "the disappearance of evidence," without specifying the evidence or how this allegedly occurred (Dkt. 28 at 1; *see also* Dkt. 31 at 1), (2) "spent an eternity degrading and attaching [sic] people [and] stating on the record that [the Court] had no regard for anything the Plaintiff had to say," conclusory allegations unsupported by the Court's record (Dkt. 28 at 2), (3) "allowed the United States attorney to lie" (Dkt. 28 at 2), with no reference to what the "lie" was or how the Court allowed it, and (4) refused to seal medical records, without citing the relevant records or the pleadings containing these records, and without stating whether Smith raised this issue with the Court at the June 15,

2020 hearing. Dkt. 28 at 2; Dkt. 31 at 2–3.[3] The Court found that the motion, even if supported by an affidavit, did not set forth any legally recognizable basis for recusal under either 28 U.S.C. sections 144 or 455, and it was denied on the record.

### B. The Second Motion (Dkts. 37, 50, 53, 54)

Before the Court is Smith's untitled motion also seeking recusal filed between June 23 and June 26 ("the Second Motion"). Dkts. 37, 45, 50, 53, 54.[4] Having carefully reviewed the motion, all pleadings, the record, and the applicable law, the Court **DENIES** the motion.

### i. The Second Motion does not comply with the statutory requirements of section 144

Like the First Motion, Smith has provided no affidavit containing the allegations he asserts as the basis of this motion. This renders the motion defective on its face, and it is denied on this ground. *Blum*, 597 F.2d at 938 ("The affidavit required by Section 144 was not filed."). Nor has Smith provided a certificate stating that this motion is made in good faith. *See Parker*, 270 F. App'x at 316.

Even if the motion were accompanied by a sworn affidavit and counsel's certificate of good faith, as discussed below, it should still be denied because the allegations raised in the motion provide no valid basis for recusal.

_____

[3] To the best of the Court's knowledge, all documents containing potentially sensitive information or medical records have been accessible only to court personnel or formally sealed.

[4] One motion (Dkt. 37) was emailed to the Court's case manager during the June 23 hearing, for which Smith and Holloway declined to appear. Two pairs of the filings (Dkts. 45 and 50, and Dkts. 37 and 54) are identical, and one of them (Dkt. 53) contains no factual allegations.

### ii. The allegations set forth in the Second Motion are legally insufficient to warrant recusal.

The Second Motion is nebulous and conclusory, containing seemingly random case citations, quotations, and incomplete sentences. One of the filings contains a ten-and-a-half-page recitation of law unrelated to any specific allegation of conduct by the undersigned judge. *See generally* Dkt. 37-1. It contains numerous conclusory allegations regarding the competence of the undersigned as a judicial officer[5] and concludes with a thinly-veiled threat to the undersigned judge, apparently from Smith, daring the Court to dismiss this case before discovery is completed, stating that the undersigned judge was "likely to make this fatal mistake and I [Smith] refuse to give you answers." Dkt. 45 at 14. Smith's motion asserts that the undersigned judge:

1. "offered an angry and dismissive 'Here we go!' when [Smith] argued that he must liberally construe the allegations in [Smith]'s complaint" (Dkt. 45 at 2)[6] and "manipulated and insult[ed] the plaintiff" (Dkt. 45 at 8);

2. was "disrespectful to every ruling" Judge Gilmore made and tampered with evidence regarding Holloway's designation as lead counsel (Dkt. 45 at 2);[7]

3. "withheld defendants service or caused the clerk to do so in his favor, all to allow the defendants to defeat [Smith]" (Dkt. 45 at 2), and instructed defendants not to appear for a hearing (Dkt. 45 at 6);

---

[5] *See, e.g.*, Dkt. 45 ("An appointment by the President of the United States that takes over 200 days to receive confirmation, is also prima face evidence that even the United States Congress saw a problem.")

[6] The transcript of the hearing indicates no reference to the requirement that the Court liberally construe *pro se* pleadings or to such an "angry and dismissive" statement from the Court.

[7] To the extent Smith complains that the docket entries in the CM/ECF system are out of numerical order, the Court finds that the grievance is not a valid basis for recusal. The Court has done its best to docket the parties' filings and Smith's numerous emails to the Court in chronological order. Smith has filed or emailed so many documents to the Court, at times in such rapid sequence, that the docket entries sometimes appear out of order.

4. "dismissed valid motions against [the Court] demanding his recusal" (Dkt. 45 at 2);

5. "berated my foreign in-house legal counsel after Justice Gilmore [sic] and he still have him listed today on the docket report, first as lead counsel, then as attorney-in-fact and then c/o me, as though to insult us" (Dkt. 45 at 2);

6. admonished [Smith] in open court for my refusal to retain a real attorney" and "tr[ied] to appoint a Guardian further exhibiting [the Court's] inability to understand my disabilities" (Dkt. 45 at 2);

7. caused individuals to be hospitalized (Dkt. 45 at 6);[8]

8. entered "defamatory" minute entries (Dkt. 45 at 12);

9. stated that the Court "did not have one [unclear]," referring to either a court reporter or a suitable recording device (Dkt. 45 at 8);

10. allowed opposing counsel to "break[] rules" and lie on the record. Dkt. 45 at 6, 14.

The motion then asserts in conclusory fashion in the final paragraph:

> Plaintiff realleges and incorporates fully set forth all facts, exhibits, evidence this court continues to commit fraud on the court, submitting false statements, omissions, destruction of records, and all are deemed violations of statute 923. 18 U.S.C. sec. 371—Conspiracy to Defraud the United States Hamilton vs. North Texas State Hospital US Case No. 7:2012-CV-00053 (5th Cir.) Appeals ROA.17-40068.4190 – 17-40068.4190 this court has further committed fraud by the manipulation of the judicial government decree records multiple times each and every single day, and conspires with the defendant to commit intentional, reckless, negligent withholding, hiding, altering, material government records, while facilitation criminal actions against statue [sic] 18 U.S. Code Chapter 25–COUNTERFEITING AND FORGERY against the "peace, will, dignity, international civil rights of the "undersigned "Pro Se" Plaintiffs being Denied (all) by RICO conspirers and a government controlled defendant.

---

[8] This conclusory assertion, and the purported evidence on which it is based, is addressed more fully in the Court's simultaneously-entered Memorandum Opinion and Order dismissing this case.

Dkt. 37-1 at 15. While it is unfortunate that Smith feels the way he does regarding the undersigned judge, the motion does not identify any extrajudicial source of alleged bias against him. *See, e.g.*, *Liteky v. United States,* 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Furthermore, Smith's allegations do not state material facts with the particularity required by section 144. The conclusory assertions are, at best, unsupported by any specific factual allegations, and, at worst, directly contradicted by the record. At the only hearing that Smith attended, both he and Holloway were treated with the dignity and respect accorded every person appearing before the Court. At no time did the Court demean Smith or Holloway or comment in any way on the merits of Smith's claims.

The Court maintained a respectful demeanor even in the face of Smith's repeated disrespectful comments. For example, after hearing the Court's rulings, Smith stated that he was "disgusted by the fact that [the undersigned judge] actually [has] the information but [the undersigned judge] [does] not take the time to read." In response, the Court asked Smith to "stop right there" and continued, "I understand you're a little upset, but here's the problem . . . ." Similarly, when the Court explained to Smith that, as a matter of law, Holloway could not file pleadings on Smith's behalf in federal court, Smith interrupted to say that was "not true." The Court responded by asking the parties whether they had read the Court's order, and proceeded to explain the legal basis for the Court's order that a power of attorney does not give an unlicensed individual the right to practice law. These statements do not come close to exhibiting the "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. at 555

("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

Despite Smith's mistaken belief that the Court should have compelled Cajun to attend the June 15, 2020 hearing, the Court took the time to explain to Smith, as a *pro se* litigant, the rules regarding service and appearance in federal court. The Court also patiently explained to Smith the fact that Holloway, who was not a licensed attorney, could not represent Smith in federal court, regardless of whether he held Smith's power of attorney or had been mistakenly listed by the Clerk's office as "lead counsel."

The record also reflects that when Smith and Holloway raised Smith's alleged incapacity to prosecute his own lawsuit, the Court asked whether a guardian *ad litem* had been appointed and two brief questions to determine whether Smith understood the purpose of the hearing.

Finally, the Court never suggested in any way that an official record of the hearing was *not* being made. Rather, the court reporter was identified on the Zoom call during the entire video conference and on the Court's minute entry orders documenting the hearings.

Stripped of their conclusory allegations, speculative opinions about the Court's rulings, and alleged statements by the Court that are unsupported by the record, Smith's Motions boil down to nothing more than disagreement with the Court's rulings 1) not to allow an individual not licensed to practice law to represent him in this case or file pleadings with the Clerk of the Court on his behalf, and 2) not to compel the appearance

of a party, who had not been served with process, at a hearing. However, disagreement with the Court's rulings alone does not form the basis of a valid motion to recuse. *See, e.g.,* *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 581 (5th Cir. 2005) ("Judicial rulings alone almost never constitute a valid basis for finding bias or partiality." (internal quotations and brackets omitted)). Even taking Smith's particularized factual allegations as true, the Court finds that no reasonable person would be convinced that the judge is biased. Accordingly, the Court finds that the motion does not set forth any legally recognizable basis for recusal under either 28 U.S.C. sections 144 and 455 and should be denied.

## IV.    Conclusion

The Court finds that with respect to both the First and Second Motions, Smith has failed to submit a "timely and sufficient affidavit" or a certificate of good faith, as is required to support disqualification under 28 U.S.C. § 144. Further, even if the Court considers the allegations set forth in the motions, the allegations are legally insufficient to support a finding that the Court has an actual extrajudicial bias or prejudice against Smith. For the reasons stated above, the Court finds that there is no valid basis for recusal under 28 U.S.C. sections 144 or 455.

Accordingly, the motions are **DENIED**.

SIGNED at Houston, Texas, this 30th day of June, 2020.

George C. Hanks Jr

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE